UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MILLER,

    Plaintiff,

v.    Case No. 17-10122

DETROIT WATER AND    HON. AVERN COHN
SEWERAGE DEPARTMENT, and
GREAT LAKES WATER AUTHORITY,

    Defendants.

_____/

## **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 17)**

### I.    INTRODUCTION

This is an employment case. Plaintiff Jason Miller (Miller) is suing Defendants City of Detroit Water and Sewerage Department (DWSD), his former employer, and Great Lakes Water Authority, which now operates many of DWSD's water treatment plants. Miller claims that DWSD unlawfully discriminated against him and terminated him in violation of the Family and Medical Leave Act of 1993, 29 U.S.C § 2601 *et seq.* (FMLA) and the Michigan Persons With Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq.* (PWDCRA). Miller's complaint is in four counts:

    I.    FMLA Interference

    II.    FMLA Retaliation

    III.    PWDCRA Discrimination

    IV.    PWDCRA Retaliation

(Doc. 1). Miller requests compensatory damages, liquidated damages, non-economic damages, reinstatement, interest, costs, and attorney's fees.

Now before the Court is DWSD's motion for summary judgment (Doc. 17). Miller has responded (Doc. 29) and DWSD has replied. (Doc. 24).[1] The parties have also submitted a joint statement of material facts. (Doc. 26). The Court declines to exercise supplemental jurisdiction over Miller's PWDCRA claims because they present a "complex issue of State law," 28 U.S.C. § 1367, and thus will only adjudicate summary judgment as to the FMLA claims. For the reasons that follow, DWSD's motion is DENIED.

## II. BACKGROUND

### A.

Miller started working as a DWSD Sewage Plant Attendant in 2001. At the times relevant to this case, he was supervised by Melvin Murphy (Murphy), Earl Hurling (Hurling), and Majid Khan (Khan). David McNeeley (McNeeley) was Khan's supervisor.

### B.

On April 13, 15, and 21, 2015, Miller called DWSD to report that he would be absent and would request FMLA time to cover the absences. (Doc. 28-7). However, since Miller's FMLA leave expired on June 30, 2014, he had no more FMLA time to cover his absences. (Doc. 28-15). Because Miller had no FMLA time available, he was marked as AWOL for the three April absences and suspended for five days starting

---

[1] The response docket number is higher than the reply docket number because Miller was instructed to re-file his response brief due to excessive use of footnotes.

2

April 27, 2015. (Doc. 28-18). On April 27, 2015, Hurling gave Miller a Corrective Disciplinary Action Form memorializing the AWOL. (Doc. 28-7).

Miller admits he had no FMLA time available to cover the April absences, but contends that DWSD did not make him aware of that fact until he received the discipline form in late April. (Doc. 28-7). Miller said that he was usually notified when his FMLA expired, and that this time he only found out when he attempted to request FMLA and it was denied. (Miller Dep. 81). A statement signed by Murphy details that on April 22, 2015, he notified Miller that he had no more FMLA time available. (Doc. 28-16).

## C.

On May 14 or 15, 2015, Miller went to Human Resources and asked for documents to make a new FMLA leave authorization request. (Miller Dep. 81; Doc. 22-1 ¶ 21). He turned the completed documents in to Human Resources around May 28, 2015 (Doc. 28-19), and the request was granted on June 5, 2015. (Doc. 30-10). Miller stated in an affidavit: "I explained [to Human Resources staff] that I wanted my FMLA time to cover the April and May 2015 absences I had as a result of needing FMLA time." (Doc. 22-1 ¶ 24). Khan said retroactive FMLA leave was possible (Khan Dep. 101) and employees would not be disciplined for an absence until FMLA requests had been approved or denied. (Khan Dep. 97). However, the FMLA request form dated May 28, 2015 and signed by Miller indicates that he was requesting FMLA for a period beginning on June 1, 2015 and ending on May 31, 2016. (Doc. 28-19). Human Resources employee Maria Young (Young) said that she, not Miller, wrote those dates on the form. (Young Dep. 172).

## D.

3

On June 3, 2015, Miller was suspended for 30 days for another AWOL that occurred on May 17, 2015. Like the April AWOLs, this AWOL also occurred because Miller called in sick requesting to use FMLA time, but had no sick or FMLA time in his bank to cover the absence. (Doc. 28-5; Miller Aff. ¶ 3). The June suspension is memorialized in two different disciplinary action forms: one unsigned on May 21, 2015 (Doc. 28-18) and the other signed on June 3, 2015. (Doc. 28-5). The June 3, 2015 document indicates that the suspension is "Pending Discharge." (Id.). Hurling said that he prepared the May 21, 2015 document as a draft, and that the final version was signed by McNeeley on June 3, 2015. (Hurling Dep. 208). Hurling said he did not know who authored the final version or added the words "Pending Discharge." (Id. at 210). The record does not reflect when the "Pending Discharge" indication was added or who added it.

In a June 4, 2015 email, Khan wrote to McNeeley the following:

> Dave [McNeeley], I Just learned from PCC, that Mr. Jason Miller turned in his FMLA documentation to HR on Monday 6/1/2015, and he called in FMLA-sick to work today, therefore his suspension notice could not be issued. Please advise if any other options are available such as mailing to his home address.

(Doc. 29-13). Young and two other Human Resources employees were copied on the email. In a response to Khan and all employees copied on the email, McNeeley wrote:

> Majid [Khan], HR was aware of his submittal of his FMLA paperwork that is why they decided to proceed with the suspension pending discharge. Maria [Young], Do we mail the certified notice of does HR?

(Id.).

## E.

On June 29, 2015, DWSD issued a Notice of Discharge stating that Miller was terminated effective July 2, 2015 because of his AWOLs. (Doc. 28-6). The termination

4

document is signed by Sue McCormick (McCormick), the DWSD Director. (Conerway Dep. at 176). Young said that McNeeley, Khan, or Hurling typically would have made the termination decision (Young Dep. 216); however, the record does not make clear who actually made the decision. Human Resources manager Terri Conerway (Conerway) said that she reviewed and approved Miller's termination (Conerway Dep. 173-75), and that she was unaware of Miller's pending FMLA request when she did so. (Id. at 183).

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc., 69 F.3d 98, 101-02 (6th Cir. 1995).

#### B. FMLA Interference

The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this

5

subchapter." 29 U.S.C. § 2615(a)(1). Interference occurs when "an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave." Mullendore v. City of Belding, 872 F.3d 322, 327 (6th Cir. 2017) (quoting Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012)). An employer may be held liable even for an unintentional violation. Marshall v. The Rawlings Co. LLC, 854 F.3d 368, 384 (6th Cir. 2017) (quoting Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 282 (6th Cir. 2012).

> To establish a prima facie case of interference, a plaintiff must show that
>
> (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled.

Mullendore v. City of Belding, 872 F.3d 322, 327 (6th Cir. 2017) (quoting Novak v. MetroHealth Med. Ctr., 503 F.3d 572, 577-78 (6th Cir. 2007)).

### C. FMLA Retaliation

The FMLA also prohibits retaliation: "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 26 U.S.C. § 2615(a)(2).

To establish a prima facie case of retaliation, a plaintiff must show that "she availed herself of a protected right under the FMLA; her employer knew she availed herself of her right under the FMLA; she suffered an adverse employment action; and there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." Marshall v. The Rawlings Co. LLC, 854 F.3d 368, 381 (6th Cir. 2017) (citing Edgar v. JAC Prod., Inc., 443 F.3d 501, 508 (6th Cir. 2006)).

6

The parties agree that the first three elements of a prima facie case have been met, and only the causal connection is at issue.

Both FMLA interference and retaliation claims are evaluated according to the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir. 2012). After a plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a non-discriminatory explanation for the conduct at issue, and then the burden shifts back to the plaintiff to show that the proffered reason was pretext. Id. at 761-62.

### IV. DISCUSSION

Three disputes of material fact render summary judgment inappropriate as to Miller's FMLA claims.

First, there is conflicting evidence regarding which employment policy was in effect at the time Miller was disciplined and terminated. The policy DWSD claims was in effect provided for termination after two AWOLs (Doc. 28-8 p. 18). However, Hurling said that "[t]his document wasn't in effect in April of 2015." (Hurling Dep. 254). According to Khan, the policy in effect called for three AWOLs before an employee could be terminated. (Khan Dep. 178). Miller was terminated after two AWOLs. The Court cannot grant summary judgment without knowing which policy was in effect, as whether DWSD violated its own employment policy would speak to the existence of pretext.

Second, Miller says the Human Resources department failed to make his May 2015 FMLA application retroactive as he had requested. (Doc. 22-1 ¶ 24). In addition to Young's deposition testimony, the face of the form makes clear that Young, not Miller,

7

was the one who filled in the requested dates. (Doc. 28-19). In absence of evidence that Miller did not request retroactivity, there remains a dispute about whether a DWSD employee refused to comply with Miller's request, which would also be evidence of pretext.

Third, the record does not make clear which supervisor made the decision to terminate Miller. Thus, it is impossible to determine whether the person who made the decision knew about Miller's recent FMLA request. In addition, although Conerway (who approved the termination decision) denies knowing about Miller's May 2015 FMLA request, the email from McNeeley to Khan states that "HR was aware of his submittal of his FMLA paperwork that is why they decided to proceed with the suspension pending discharge." (Doc. 29-13). While it is possible that the email was intended to communicate something other than blatant discrimination, DWSD has failed to offer an alternative explanation.

## V. CONCLUSION

For the reasons stated above, Miller's PWDCRA claims are DISMISSED without prejudice. However, the case will proceed as to Miller's FMLA claims because DWSD is not entitled to summary judgment on those claims. The case manager is directed to set a conference with the parties.

SO ORDERED.

             s/Avern Cohn
              AVERN COHN
              UNITED STATES DISTRICT JUDGE

Dated: July 13, 2018
Detroit, Michigan